NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER CASTELLUZO,<br><br>Defendant. | Crim. No. 13-00560 (GC)<br><br>**OPINION** |

**CASTNER, District Judge**

**THIS MATTER** comes before the Court upon *pro se* Defendant Christopher Castelluzo's Motion for Reduction in Sentence pursuant to 18 U.S.C. § 3582(c)(2), Motions for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) (the First Step Act), and Motion to Strike.  (ECF Nos. 153, 159, 177, 184.)  The Government opposed (ECF Nos. 160, 164, 183), and Defendant replied (ECF Nos. 165, 176, 181, 182, 185, 186).  The Court has carefully reviewed the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1(b).[1]  For the reasons set forth below, and other good cause shown, Defendant's Motions are **DENIED**.

**I.    BACKGROUND**

"A jury found [Defendant] and [his] co-defendant . . . guilty of conspiring to distribute and to possess with the intent to distribute methylone, cocaine, MDMA, and marijuana in violation of 21 U.S.C. § 846."  *United States v. Castelluzzo*, 740 F. App'x 226, 227 (3d Cir. 2018).  On March 22, 2016, the Court sentenced Defendant to 240 months of imprisonment.  (ECF No. 110.)

---

[1]    Local Civil Rule 78.1 applies to criminal cases in the District of New Jersey.  *See* L. Civ. R. 1.1.

Defendant appealed his conviction, arguing that "the District Court erred in denying his motion to suppress and in applying an enhancement under § 3B1.1(a) of the U.S. Sentencing Guidelines (U.S.S.G.) for Castelluzzo's role in the offense as an organizer or leader." *Castelluzzo*, 740 F. App'x at 227. The United States Court of Appeals for the Third Circuit affirmed Defendant's conviction. *Id.*

On November 5 and December 5, 2024, Defendant filed his first two Motions, seeking relief under § 3582(c)(2) and § 3582(c)(1)(A). (ECF Nos. 153 & 159.) On January 23, 2025, the Court denied Defendant's Motions only as to his requested relief under § 3582(c)(2). (*See* ECF Nos. 166 & 169.) Subsequently, Defendant filed a Motion for Reconsideration and Notice of Appeal of the Court's decision. (*See* ECF Nos. 167 & 168.) In response to Defendant's Motion for Reconsideration and Notice of Appeal, the Court issued a Text Order, clarifying that its January 23, 2025 Decision denied Defendant's Motions only as to his requested relief under § 3582(c)(2), not relief sought under § 3582(c)(1)(A), and that "Defendant shall notify the Court within 14 days if he wishes to proceed with his Motion for Reconsideration [] and Notice of Appeal []." (ECF No. 169.) Defendant then filed requests to withdraw both his Motion for Reconsideration and Notice of Appeal (ECF Nos. 172 & 173), which the Court granted (ECF No. 174).

On February 28, 2025, Defendant filed a Supplemental Motion, seeking relief under § 3582(c)(2) and § 3582(c)(1)(A). (ECF No. 177.) After the Government filed an opposition to Defendant's February 28, 2025 Motion, Defendant filed a Motion to Strike the Government's opposition. (ECF No. 184.)

Before the Court are three Motions for Compassionate Release pursuant to § 3582(c)(1)(A)

(ECF No. 153, 159, 177),[2] one Motion to Reduce Defendant's sentence pursuant to § 3582(c)(2) (ECF No. 177), and one Motion to Strike the Government's opposition (ECF No. 184).

## II.   LEGAL STANDARD

### A.   Compassionate Release

A district court generally has limited authority to modify a federally imposed sentence once it commences. *Dillon v. United States*, 560 U.S. 817, 824 (2010) (noting that a sentence of imprisonment "may not be modified by a district court except in limited circumstances"). However, the First Step Act permits courts to grant compassionate release when there are "extraordinary and compelling reasons" to reduce a sentence. 18 U.S.C. § 3582(c)(1)(A).

The First Step Act, passed in December 2018, *see* Pub. L. No. 115-391, 132 Stat. 5194 (2018), enables defendants to file motions for compassionate release on their own behalf. Before the First Step Act, the Bureau of Prisons (BOP) was the "sole arbiter of compassionate release motions." *See United States v. Brooker*, 976 F.3d 228, 233 (2d Cir. 2020). Although BOP still has "the first opportunity to decide a compassionate release motion, and may still bring a motion on a defendant's behalf," a defendant now "has recourse [by filing a motion in federal court] if BOP either declines to support or fails to act on that defendant's motion." *Id.*; 18 U.S.C. § 3582(c)(1)(A).

Once the First Step Act's procedural prerequisites are satisfied, a district court may reduce a defendant's sentence "if the court finds that (1) extraordinary and compelling reasons warrant a reduction, (2) the reduction would be consistent with applicable policy statements issued by the Sentencing Commission, and (3) the applicable sentencing factors under § 3553(a) warrant a

---

[2]   The Court notes that two of Defendant's Motions for Compassionate Release are nearly identical. (*See* ECF Nos. 153 & 159.)

reduction." *United States v. Burd*, Crim. No. 21-86, 2023 WL 3271167, at *1 (D.N.J. May 5, 2023) (quoting *United States v. Sparrow*, Crim. No. 18-653, 2020 WL 4364328, at *2 (D.N.J. July 30, 2020), *aff'd*, 837 F. App'x 932 (3d Cir. 2021)).

### B. Reduction of Sentence

"By its terms, § 3582(c)(2) does not authorize a sentencing or resentencing proceeding," but rather "provides for the 'modif[ication of] a term of imprisonment' by giving courts the power to 'reduce' an otherwise final sentence in circumstances specified by the Commission." *Dillon v. United States*, 560 U.S. at 825. Courts are guided by a two-step process when reviewing claims brought under § 3582(c)(2). *United States v. Lawton*, 848 F. App'x 499, 500 (3d Cir. 2021). At step one, "§ 3582(c)(2) requires the court to follow the Commission's instructions . . . to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." *Id.* At step two of the inquiry, a court considers "any applicable § 3553(a) factors and determine[s] whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case." *Id.* at 500-01.

## III. DISCUSSION

### A. Motion to Strike

Defendant's Motion to Strike stems from the Government's failure to timely respond to his February 28, 2025 Motion. (ECF Nos. 177 & 184.) As courts in this district have held, "a motion to strike another party's motion, supporting brief, or exhibits attached to a motion is procedurally improper." *Puricelli v. Barkan*, Civ. No. 20-16068, 2022 WL 92807, at *9 (D.N.J. Jan. 10, 2022) (collecting cases). The Court sees no reason why this rule should not apply equally in the criminal context. *Cf. United States v. Wilson*, Crim. No. 22-00856, 2025 WL 1114647, at *1 n.1 (D.N.J. Apr. 15, 2025) (finding that the rule in civil proceedings permitting a court to disregard new arguments raised for the first time in a reply brief, "applie[d] equally in the criminal context").

4

Therefore, because the Court finds that Defendant's Motion to Strike the Government's brief is improper, and because Defendant will not be prejudiced by the Court considering the Government's submission (*see* ECF No. 183) given that Defendant filed a reply brief addressing the Government's arguments (*see* ECF No. 185), the Court denies Defendant's Motion to Strike.

### B.   Motion to Reduce Sentence

Pursuant to § 3582(c)(2), "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission," and "upon motion of the defendant," a "court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."

On January 23, 2025, the Court denied Defendant's Motion to Reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2). (ECF No. 166.) For the reasons outlined in that Order, and other good cause shown, the Court will again deny Defendant's Motion pursuant to § 3582(c)(2).[3]

---

[3]   The Court further agrees with the Government that Defendant has not shown that Amendment 821 would change his sentencing range. (ECF No. 160 at 3-4.) *See United States v. McDaniels*, Crim. No. 11-200, 2024 WL 3509636, at *2 (W.D. Pa. July 23, 2024) (noting that the defendant was "not eligible for a sentence reduction because Amendment 821 d[id] not have the effect of lowering his guideline range"); *United States v. Austin*, 529 F. App'x 143, 145 (3d Cir. 2013) (noting that "[b]ecause the Amendment d[id] not change [the defendant's] sentencing range, § 3582(c)(2) d[id] not authorize a reduction in his sentence").

Moreover, the Court rejects Defendant's argument that the Government's alleged "change in factual allegations of [Defendant's] drug conspiracy conduct" through the civil forfeiture process warrants a reduced sentence under § 3582(c)(2). (ECF No. 177-1.) As the Third Circuit has recognized, "[a] district court may reduce a sentence under § 3582(c)(2) *only if* the defendant 'has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission.'" *United States v. Caden*, 699 F. App'x 105, 106 (3d Cir. 2017) (quoting 18 U.S.C. § 3582(c)(2)) (emphasis added). Because Defendant has not argued that the Sentencing Commission has implemented changes that would result in a lower sentence, his sentence should not be reduced pursuant to § 3582(c)(2).

### C. Motions for Compassionate Release[4]

The First Step Act does not define "extraordinary and compelling reasons," which means that district courts have some "flexibility and discretion to consider the unique circumstances" for each compassionate release motion. *United States v. Doolittle*, Crim. No. 19-501, 2020 WL 4188160, at *2 (D.N.J. July 21, 2020) (citing *United States v. Rodriguez*, 451 F. Supp. 3d 392, 398-99 (E.D. Pa. 2020)). When giving shape to this "otherwise amorphous phrase," courts may look to the statute's "text, dictionary definitions, and the policy statement" of the U.S. Sentencing Commission. *United States v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021).

In *Andrews*, the district court (affirmed on appeal) explained that "[t]he ordinary meaning of extraordinary is '[b]eyond what is usual, customary, regular, or common.' And the ordinary meaning of compelling need is '[a] need so great that irreparable harm or injustice would result if it is not met.'" *United States v. Andrews*, 480 F. Supp. 3d 669, 682-83 (E.D. Pa. 2020), *aff'd*, 12 F.4th 255 (3d Cir. 2021) (first quoting *Extraordinary*, Black's Law Dictionary (10th ed. 2014); and then quoting *Compelling Need*, Black's Law Dictionary (10th ed. 2014)).

---

[4] The procedural prerequisites for judicial review of compassionate release motions require the defendant to "fully exhaust administrative remedies within the [Bureau of Prisons] or wait 30 days from the date the facility's warden receives defendant's request, whichever happens first." *United States v. Alston*, Crim. No. 03-844, 2023 WL 2238297, at *2 (D.N.J. Feb. 27, 2023) (citing 18 U.S.C. § 3582(c)(1)(A)); *United States v. Raia*, 954 F.3d 594, 595 (3d Cir. 2020). The burden is on the defendant to demonstrate that he satisfied this procedural prerequisite for judicial review. *United States v. McNair*, 481 F. Supp. 3d 362, 365 (D.N.J. 2020) (quoting *United States v. Sellers*, Crim. No. 10-434, 2020 WL 1972862, at *1 (D.N.J. Apr. 24, 2020)). A defendant's noncompliance with section 3582(c)(1)(A)'s exhaustion requirement "presents a glaring roadblock foreclosing compassionate release." *Raia*, 954 F.3d at 597. Here, it appears that Defendant has complied with the procedural prerequisites (*see* ECF No. 153 at 25), and the parties do not present any arguments that Defendant failed to comply with the procedural prerequisites for compassionate release.

Defendant asserts that the following extraordinary and compelling reasons warrant compassionate release: (1) sentencing disparities, (2) COVID-19, (3) inadequate medical care, and (4) rehabilitation. (*See* ECF Nos. 153, 159, 177.) The Court will address each argument in turn.

### 1. *Sentencing Disparities*

As recognized by the Third Circuit, "Congress enumerated 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct' as a factor that must be considered after a prisoner is determined eligible for compassionate release." *United States v. Rutherford*, 120 F.4th 360, 377 n.24 (3d Cir. 2024) (quoting 18 U.S.C. § 3553(a)(6)); *see United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006) ("Congress's primary goal in enacting § 3553(a)(6) was to promote national uniformity in sentencing rather than uniformity among co-defendants in the same case."). Notwithstanding, courts in this Circuit and other circuits have considered sentencing disparities as part of the "extraordinary and compelling" circumstances analysis. *See, e.g.*, *United States v. Murphy*, Crim. No. 21-906, 2024 WL 887538, at *4 (D.N.J. Feb. 29, 2024) (considering disparity of a defendant's sentence in context of the extraordinary and compelling circumstances analysis); *United States v. Eccleston*, 573 F. Supp. 3d 1013, 1017 (D. Md. 2021) ("A sentencing disparity may, in limited circumstances, constitute an extraordinary and compelling reason to reduce a sentence and grant compassionate release." (citing *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020))). However, a sentencing disparity alone is not an extraordinary and compelling reason to reduce a sentence. *See United States v. Wilson*, Crim. No. 14-209, 2020 WL 7872628, at *6 (E.D. Pa. Dec. 31, 2020).

Defendant argues that the sentencing disparity between his 240-month sentence and the sentences of other defendants involved in similar or more egregious conduct, as well as the disparity between his sentence and his co-defendant's sentence, constitute extraordinary and

compelling circumstances warranting a sentence reduction. (ECF No. 153 at 7-11; ECF No. 159 at 7-11.) The Court disagrees.

Defendant's argument that there is a disparity between his sentence of 240 months and his co-defendant's sentence of 220 months is unavailing. At the time of sentencing, Judge Freda Wolfson, U.S.D.J. (ret.) determined that Defendant's guideline range was 292 to 365 months (ECF No. 124 at 41), while his co-defendant's guideline range was 210 to 240 months (ECF No. 138 at 59).[5] Judge Wolfson also determined that Defendant had a higher criminal history category (category 5) compared to that of his co-defendant (category 3) given Defendant's criminal record. (ECF No. 124 at 5; ECF No. 138 at 4.) Moreover, Judge Wolfson determined that the leader or organizer enhancement applied to Defendant but not his co-defendant. (ECF No. 124 at 31, 34, 54; ECF No. 138 at 45.) As a result, because the difference in the guideline range between Defendant and his co-defendant was substantial, the Court does not find that the disparity in the ultimate sentences (*i.e.*, 20 months) warrants compassionate release. *See United States v. Manning*, Crim. No. 14-00326, 2025 WL 24717, at *3 (D.N.J. Jan. 2, 2025) (noting that "[b]ecause [the defendant's] [c]riminal [h]istory was significantly higher than that of [his co-defendant], the disparity between the sentences of the two defendants was reasonable," and therefore did not warrant a reduced sentence).

The Court similarly finds Defendant's argument that there is a sentencing disparity between his sentence and other defendants across the country to lack merit. Defendant points to numerous cases from across the country as support for the position that individuals charged with the same (or more egregious) conduct have received lesser sentences. However, the cases cited by Defendant are not only factually distinct from the present matter, but were related to the following:

---

[5]  The Court notes that the statutory maximum for the applicable offense is 240 months.

(1) situations where courts have considered whether a change in the law gives rise to extraordinary and compelling circumstances justifying compassionate release; (2) a plea agreement that called for a reduced sentence; (3) a sentencing disparity between co-defendants; or (4) a circumstance where a court reduced a sentence without providing clear justification for its decision. (*See* ECF No. 153 at 7-11 (collecting cases); ECF No. 159 at 7-11 (same); ECF No. 165 at 5-8 (same).) Defendant does not assert that there has been a change in law or a plea agreement in this case that warrants a reduced sentence. Nor, as already discussed, does the Court find the sentencing disparity between Defendant and his co-defendant to be improper as to warrant a reduction in Defendant's sentence. Moreover, because a court's decision to reduce a sentence is a highly fact sensitive inquiry, *see United States v. Donley*, Crim. No. 88-00066, 2021 WL 6197633, at *8 (D.N.J. Dec. 30, 2021), the Court will not reduce Defendant's sentence based on non-binding cases that have reduced a sentence in different factual scenarios. As a result, the Court finds that the cases cited by Defendant do not justify reducing his sentence.

Accordingly, the Court finds that the existence of any sentencing disparity in this case does not constitute an extraordinary and compelling reason to warrant a reduced sentence.

### 2. COVID-19

It is well settled that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *Raia*, 954 F.3d at 597. Here, Defendant argues that being incarcerated during the entirety of the COVID-19 pandemic is an extraordinary and compelling reason to reduce his sentence because during that time his ability to "participate in programming and interact with his family and support system" were impeded. (ECF No. 153 at 11; ECF No. 159 at 11.) He also argues more generally that the harshness of COVID-19 is an extraordinary and compelling circumstance to warrant a reduced sentence. (ECF No. 153 at 11-13; ECF No. 159 at 11-13.) While the Court is sympathetic

to Defendant's concerns surrounding COVID-19, courts have routinely found that similar arguments do not give rise to "extraordinary and compelling" reasons to justify reducing an inmate's sentence. *See, e.g.*, *United States v. Haynes*, Crim. No. 18-00058, 2023 WL 5287806, at *3 (D.N.J. Aug. 16, 2023) (rejecting compassionate release on the basis of the defendant's claim that the prison mishandled the pandemic by instituting "intensive lock-downs, no recreational time, extremely limited personal hygiene options, limited phone use to communicate with family, limited computer use for law library and family communication, no contact visits, cold meals always served late, and constant fear of getting infected and possible loss of life") (citation modified); *United States v. Crespo*, Crim. No. 13-00428, 2022 WL 3572846, at *4 (D.N.J. Aug. 19, 2022) (noting that "[w]hile the [c]ourt has no doubt that the lockdown conditions were very challenging for [the] [d]efendant," the challenges of COVID-19 do not give rise to extraordinary and compelling circumstances to reduce a sentence); *United States v. Henderson*, Crim. No. 15-0329, 2022 WL 1617678, at *5 (D.N.J. May 23, 2022) (acknowledging the "unexpected limitations and the hardships [that COVID-19] may impose on incarcerated individuals," but noting that the hardships "do not form a basis for extraordinary and compelling circumstances that warrant a sentence reduction").

Indeed, "courts cannot release every prisoner enduring" difficulties related to COVID-19 "because the [c]ourt would then be obligated to release every prisoner." *United States v. Burney*, Crim. No. 18-606, 2021 WL 4963253, at *8 (D.N.J. Oct. 25, 2021). Moreover, Defendant has not cited to any conditions unique to him, but rather only to conditions that all inmates faced, which is insufficient to warrant a reduced sentence. *See United States v. Bulaman*, Crim. No. 12-794, 2022 WL 3913430, at *4 (D.N.J. Aug. 31, 2022) (noting that the "cited conditions are not unique to [the] [d]efendant—prisoners across federal facilities have been subject to such [lockdown]

10

conditions as a result of the COVID-19 pandemic"); *United States v. Acosta*, Crim. No. 19-389, 2022 WL 2133866, at *4 n.3 (E.D. Pa. June 14, 2022) ("'[H]arsh' conditions of confinement created in response to the COVID-19 pandemic are applicable to 'all inmates and do not in themselves warrant special treatment.'" (citation omitted)).

Therefore, the Court finds that the difficulties experienced by Defendant due to the pandemic do not constitute an "extraordinary and compelling" reason for a reduced sentence.

### 3. Inadequate Medical Care

A medical condition may constitute an extraordinary and compelling circumstance for a reduced sentence if:

> (A) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (B) The defendant is—
>
> > (i) suffering from a serious physical or medical condition,
> >
> > (ii) suffering from a serious functional or cognitive impairment, or
> >
> > (iii) experiencing deteriorating physical or mental health because of the aging process,
> >
> > > that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

11

U.S.S.G. § 1B1.13(b)(1)(A)-(C).

"[C]ourts have concluded that the failure to provide necessary treatment or undue delays in treating serious medical conditions may present 'extraordinary and compelling reasons' warranting compassionate release." *United States v. Verasawmi*, Crim. No. 17-254, 2022 WL 2763518, at *7 (D.N.J. July 15, 2022) (collecting cases where courts have granted compassionate release based on inadequate medical care). "A motion for compassionate release premised on the BOP's 'indifference' to an inmate's medical conditions or failure to provide adequate care bears similarities to claims under the Eighth Amendment for 'deliberate indifference' to a prisoner's 'serious medical needs.'" *Id.* at 8 (quoting *Palakovic v. Wetzel*, 854 F.3d 209, 228 (3d Cir. 2017)). Importantly, "[w]here a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference, because prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners." *Id.* To establish deliberate indifference, a defendant must show that "prison officials opted for an easier and less efficacious treatment of the inmate's condition, denied reasonable requests for medical treatment when such denial exposed the inmate to undue suffering or the threat of tangible residual injury, or delayed necessary medical treatment for non-medical reasons." *Id.* (citation modified).

Defendant argues that he received emergency surgery after "he completely severed his right bicep which rendered his entire arm unable to function." (ECF No. 177-1 at 5.) According to Defendant, the surgery was not performed properly, and another doctor informed Defendant that he needed a second surgery. (*Id.*) Additionally, it has been several months since Defendant's injury and a second surgery has not yet occurred. (*Id.*) Defendant contends that his "right arm remains unusable and still causes pain." (*Id.*) Defendant asserts that his argument is not premised

on Eighth Amendment violations, but rather the BOP's indifference to his medical condition and/or its failure to provide him adequate care. (*Id.* at 6-9.)

While the Court is sympathetic to Defendant's medical needs, the Court does not find that Defendant's medical condition warrants compassionate release. First, according to Defendant, the BOP scheduled the initial surgery within days of the injury. (ECF No. 177-1 at 5.) The BOP recognized the severity of Defendant's injury and promptly provided Defendant with needed medical care. While the most prudent course of action on the part of the BOP would be to promptly schedule a follow-up surgery, it is well established that "[p]risoners are entitled to adequate care, not the best and most timely care possible." *Skladany v. Provanzano*, Civ. No. 12-2497, 2012 WL 5989380, at *1 (D.N.J. Nov. 28, 2012); *see also Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (noting that "[c]ourts will 'disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . (which) remains a question of sound professional judgment.'" (quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977))). Based on the facts before it, the Court will not question BOP's scheduling of the second surgery, especially since the record does not suggest any nefarious or improper reason for the delay.

Second, the Court does not find that Defendant's bicep injury is the type of medical condition that justifies compassionate release because the record before the Court does not suggest that Defendant's injury "substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover." U.S.S.G. § 1B1.13(b)(1)(B); *see United States v. Jones*, Crim. No. 07-00208, 2021 WL 2334285, at *3 n.34 (M.D. Pa. June 8, 2021) ("To the extent that [the defendant] asserts her necessary surgery independently justifies compassionate release, this is not a proper basis upon which to grant compassionate release. Rather, to the extent that [the defendant] believes the BOP is improperly

13

denying needed medical surgery, she should pursue relief by filing a civil rights action against the responsible parties."). Indeed, compassionate release based on a medical condition is reserved for rare cases in which a defendant has a life-threatening or debilitating condition, or a series of serious medical issues. *See, e.g.*, *United States v. Manna*, Crim. No. 88-00239, 2025 WL 1122286, at *4-6 (D.N.J. Apr. 16, 2025) (finding that the defendant's metastatic lung cancer that spread throughout his lungs and the defendant's inability to care for himself were extraordinary and compelling reasons rendering him eligible for compassionate release); *Verasawami*, 2022 WL 2763518, at *7-10 (finding that the defendant's severe lung and throat damage following her COVID-19 infection and subsequent intubation, longstanding psychiatric challenges, heart irregularities that [were] consistent with pulmonary arterial hypertension, migraines, and incontinence, combined with delays and inadequacies of treatment, were extraordinary and compelling reasons rendering [the defendant] eligible for compassionate release); *United States v. Robles*, Crim. No. 19-4122, 2022 WL 229362, at *2 (S.D. Cal. Jan. 26, 2022) (finding a reduced sentence appropriate where the defendant suffered from multiple serious medical conditions and had five strokes within a year and a half); *United States v. Beck*, 425 F. Supp. 3d 573, 580-84 (M.D.N.C. 2019) (finding that early release was appropriate because the BOP took eight months to schedule a biopsy, and the delay caused cancer to metastasize and require a "radical mastectomy"); *United States v. Almontes*, Crim. No. 05-58, 2020 WL 1812713, *6-7 (D. Conn. Apr. 9, 2020) (finding that a reduced sentence was appropriate after BOP delayed a defendant's spinal surgery needed to correct a broken neck injury for over a year and a half).[6]

---

[6] Based on Defendant's reply to the Government's opposition, it is unclear whether Defendant has since had the second surgery which would render this issue moot. (*See* ECF No. 185.)

Accordingly, the Court finds that his medical condition does not warrant compassionate release at this time.

### 4. *Rehabilitation*

The Third Circuit has made clear that "rehabilitation cannot 'by itself' serve as an extraordinary and compelling reason for [a defendant's] release." *United States v. Stewart*, 86 F.4th 532, 536 (3d Cir. 2023) (citing U.S.S.G. § 1B1.13(d); 28 U.S.C. § 994(t)); *United States v. Adeyemi*, 470 F. Supp. 3d 489, 499 (E.D. Pa. 2020) ("Congress did not define 'extraordinary and compelling reasons' except to provide 'rehabilitation . . . alone' does not suffice." (quoting 28 U.S.C. § 994(t))). Rather, "a defendant's rehabilitation may only 'contribute to extraordinary and compelling reasons.'" *McNair*, 481 F. Supp. 3d at 370 (quoting *Rodriguez*, 451 F. Supp. 3d at 405). "[A]bsent any other circumstances that could constitute extraordinary or compelling reasons for a reduction," efforts toward rehabilitation will not warrant granting a motion for compassionate release. *United States v. Gantt*, Crim. No. 06-00699-1, 2024 WL 3385493, at *3 (D.N.J. July 12, 2024).

In support of his rehabilitation argument, Defendant asserts that since his incarceration, he "has participated in numerous rehabilitative and educational programs, including participating in such programs upon his arrival to the FCI-Danbury facility." (ECF No. 153 at 5; ECF No. 159 at 5.) As examples of his rehabilitative effort, Defendant has attached multiple certifications and letters of support to his Motions. (ECF No. 153 at 27-43; ECF No. 159 at 27-41.) In Defendant's July 1, 2025 letter to the Court, he cites to additional programs he has completed as further support of his rehabilitative efforts. (ECF No. 186 at 2.)

While the Court commends Defendant in his efforts to rehabilitate himself, courts in the Third Circuit have found that inmates with significantly more rehabilitative accomplishments failed to meet the "extraordinary and compelling" reasons threshold. *See, e.g.*, *Manning*, 2025 WL

15

24717, at *3 (noting that while the defendant's "rehabilitation is certainly commendable," including completing several classes and release preparation programs, and earning his GED while incarcerated, he did not meet the "'extraordinary and compelling' threshold," especially given the defendant's two infractions while incarcerated); *United States v. Moore*, Crim No. 19-405, 2024 WL 4393138, at *4 (D.N.J. Oct. 2, 2024) (finding that the defendant having served five years of his twelve year sentence, "remained incident free," and "participated in all programs available to him," did not provide a basis for a reduced sentence); *United States v. Gordon*, 585 F. Supp. 3d 716, 717 (E.D. Pa. 2022) (finding that (1) after serving 306 months of a 608 month sentence; (2) completing over 125 courses and 500 hours of educational programming; (3) receiving "numerous certificates in areas such as anger management, victim impact, and behavior modification"; (4) being an instructor for multiple courses; (5) learning to read, write, and understand Spanish; and (6) receiving no disciplinary violation in over eleven years, the defendant's "impressive" rehabilitation efforts were insufficient to find an "extraordinary and compelling" reason to reduce the defendant's sentence), *aff'd*, 2022 WL 2582547 (3d Cir. July 8, 2022). *But see United States v. Pray*, Crim No. 88-175, 2024 WL 4345067, at *7-8 (D.N.J. Sept. 30, 2024) (finding that although the case was a "close call," the "propriety of the relief sought is pushed over the top by [the defendant's] exemplary demonstration of rehabilitation" such as the following: (1) being a counselor to those incarcerated; (2) publishing two books intended to help underprivileged readers avoid succumbing to temptations associated with the drug industry; (3) designing and implementing educational programs for inmates intended to help change their lives; (4) having current and former government officials praise and support the defendant's work; (5) his exemplary behavior while incarcerated; and (6) his ability to quell tense situations between inmate gangs and be a positive influence on younger inmates).

16

Moreover, Defendant's rehabilitative achievements are diminished in light of two emails he sent to family members in 2022, in which Defendant threatened to harm government officials. (*See* ECF No. 160 at 7; ECF No. 165 at 13 (acknowledging the "two [] angry emails that [Defendant] sent to his family after learning that the Government had seized his cryptocurrency property in 2022").)  In the first email, Defendant stated:

> Do you see how ridiculous this is?  This [prosecutor] dude is a f*cking moron and clearly unfit to hold his position. . . .  And should that man get disbarred for what he is doing, so help me god I will take an assault charge just to break his f*cking jaw.  I'll do it right in front of the camera and cop out to the accusations.  I won't even waste government funds to fight the case.  However, I'll drag the matter out in court long enough for his jaw to heal up.  Then I'll break his f*cking jaw one more time so they can run both assault charges concurrent.

(ECF No. 160 at 7.)  In the second email, Defendant stated the following:

> Listen mom, you want a jpay message so it can be used in a court room.  Here you go mom.  I Christopher castelluzzo give my mother permission to pull my credit file and fix my f*cking credit.  F*CK SID, F*CK the government, F*CK the FBI.  The prosecutor could s*ck my d*ck from the back.  F*ck the judge too if he believes their bullsh*t.  F*ck everybody.  They can read this letter in the f*cking court room.  IF I DON'T GET MY MONEY BACK THE SECOND I GET RELEASED TURN INTO FOX F*CKING FIVE.  I dont give a f*ck if I spend the rest of my life in jail.  I really dont give a flying f*ck.  F*ck all you motherf*ckers.  There you go mom.  Now you have something to present in court :)

(*Id.*)

Defendant disputes the Government's argument that all of his rehabilitation efforts are negated by these two emails.  (ECF No. 165 at 13.)  The Court agrees with Defendant that these two emails do not "completely negate[]" his rehabilitation efforts.  (*Id.*)  However, while the Court is encouraged by Defendant's efforts to engage in educational and rehabilitative programs, his past threats of violence cannot be ignored.  This is so because, when a defendant threatens violence to

another individual or engages in violent conduct, such behavior may effectively counteract a defendant's rehabilitative efforts and suggest that the defendant poses a danger to the public. *See United States v. Lynn*, Crim. No. 07-00454, 2025 WL 663606, at *4 (D.N.J. Feb. 28, 2025) (finding that a defendant's violent infractions while in prison "directly contradict[ed] his assertions that his rehabilitation efforts no longer m[ade] him a danger to the public" to justify his early release). The Court therefore finds that, notwithstanding Defendant's rehabilitation achievements, his statements in the two emails are concerning to this Court.

Therefore, the Court finds that Defendant has failed to show that his rehabilitation is extraordinary and compelling to warrant a reduced sentence.[7]

### D.    18 U.S.C. § 3553(a) factors

Ultimately, even if these circumstances rose to the level of extraordinary and compelling, the Court finds that the § 3553(a) factors weigh strongly against Defendant's release. *See United States v. Pawlowski*, 967 F.3d 327, 331 (3d Cir. 2020) (noting that "a court reviewing a motion for compassionate release [must] 'consider[ ] the factors set forth in [§] 3553(a) to the extent that they are applicable.'") Under § 3553(a), a court must impose a sentence that is "sufficient, but not greater than necessary" to comply with the purposes of sentencing, including the need for the sentence to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," afford adequate deterrence, protect the public from additional crimes by the defendant, and "provide the defendant with needed educational or vocational

---

[7] The Court also notes that even if Defendant did engage in rehabilitative efforts that were extraordinary and compelling, rehabilitation alone is not a basis for compassionate release. *See McNair*, 481 F. Supp. 3d at 370 (finding that while the defendant's good behavior in prison and educational achievements, which are both part of the rehabilitation analysis, are commendable, "efforts to rehabilitate and educate himself, . . . alone, cannot demonstrate 'extraordinary and compelling reasons' to warrant [the defendant's] release").

training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(A)-(D).  A court must also consider the "nature and circumstances of the offense and the history and characteristics of the defendant" and the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," among other factors. *Id.* § 3553(a)(1), (6); *see also United States v. Tapia*, Crim. No. 23-1811, 2023 WL 4575946, at *2 (3d Cir. July 18, 2023) ("A district court 'may reduce the term of imprisonment' and 'impose a term of probation or supervised release' if it finds that 'extraordinary and compelling reasons warrant such a reduction.'  Before granting such relief, a district court must consider the sentencing factors in § 3553(a)." (quoting 18 U.S.C. § 3582(c)(1)(A)(i))).

Here, Defendant's actions are undoubtedly serious in nature as Defendant and his co-defendant conspired to distribute and to possess with the intent to distribute methylone, cocaine, MDMA, and marijuana. *See United States v. Yarbough*, Crim. No. 14-270, 2014 WL 7343839, at *3 (W.D Pa. Dec. 23, 2014) (noting that conspiracy to possess with intent to distribute is a serious crime); *United States v. Johnson*, Crim. No. 07- 10044, 2025 WL 1088809, at *16 (C.D. Ill. Apr. 11, 2025) (pending publication) (noting that "conspiring to distribute controlled substances is a serious offense").  Thus, to promote respect for the law, provide just punishment, and afford adequate deterrence, the Court finds that Defendant must serve the greater part of his sentence and remain incarcerated. *See Pawlowski*, 967 F.3d at 329 (affirming denial of compassionate release in bribery and fraud case where the district court determined that the defendant's time served did not weigh in favor of release); *United States v. Doe*, 833 F. App'x 366, 368 (3d Cir. 2020) ("[T]he District Court did not abuse its discretion in assessing the seriousness of Doe's offense of conviction."); *United States v. Neff*, 523 F. Supp. 3d 726, 729 (E.D. Pa. 2021) ("Given the seriousness of the offenses of conviction, [the] [d]efendant's release, with less than fifty percent

19

of his sentence served, would not reflect the seriousness of the offenses, promote respect for the law, or provide just punishment for the offenses."); *United States v. Burney*, Crim. No. 18-00606, 2021 WL 62302, at *3 (D.N.J. Jan. 6, 2021) ("Accordingly, [d]efendant [] presents a danger to the community, and the Court finds that releasing him at this time would not reflect the seriousness of his offense, nor promote respect for the law. To be sure, Courts in this circuit have consistently considered the seriousness of multiple bank robberies in denying compassionate release in order to protect the public from further crimes of the defendant.").

Moreover, the Court finds that there is a need to protect the public from further crimes of Defendant. The Court is troubled by the two emails from 2022. These emails, coupled with Defendants extensive criminal history for multiple prior drug offenses (*see* ECF No. 124 at 5, 41), some of which were committed while on pre-trial release, weigh against granting Defendant compassionate release. *See United States v. Gideon*, Crim. No. 13-429, 2020 WL 7351212, at *3 (D.N.J. Dec. 15, 2020) (finding that when weighing the § 3553(a) factors, the concern that a defendant "may pose a danger to public safety if released . . . alone is sufficient to deny compassionate release" motions).

### IV.    CONCLUSION

For the foregoing reasons, and other good cause shown, Defendant's Motions (ECF Nos. 153, 159, 177, 184) are **DENIED** without prejudice. An appropriate Order follows.

Dated: July 31, 2025

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE